Case 2:10-cv-00371-RAJ-LRL Document 111 Filed 09/03/15 Page 1 of 19 PageID# 1449



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

STRETCHLINE
INTELLECTUAL PROPERTIES LTD.,

    Plaintiff,

v.                                        CIVIL ACTION NO. 2:10-cv-371

H&M HENNES & MAURITZ LP,

    Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is the Motion for Attorneys' Fees pursuant to Federal Rules of Civil Procedure ("FRCP") 54 and 35 U.S.C. § 285 filed by Defendant H&M Hennes & Maurtiz LP ("H&M") against Plaintiff Stretchline Intellectual Properties LTD. ("Stretchline"). The motion has been fully briefed, is ripe for judicial determination, and a hearing will not aid in the disposition. For the reasons set forth herein, Defendant's Motion to for Attorneys' Fees is **DENIED**.

### I.    FACTUAL & PROCEDURAL HISTORY

This matter stems from Stretchline's claims against Defendant H&M Hennes & Mauritz LP ("H&M") alleging that Defendant has infringed its patent, in violation of 35 U.S.C. § 271(a)-(c), by making, using, selling, or offering to sell in, or importing into, the United States, including in this district, one or more products claimed in one or more claims of the '578 Patent or made by a process claimed in one or more claims of the '578 Patent, including without limitation, H&M "Beauty" Underwire Lace brassiere and H&M "Beauty" Underwire Light Padding brassiere.

The United Kingdom (hereinafter "UK") patent which is the subject of parallel

1

proceedings in the UK, was filed April 18, 1996. The '578 Patent at issue in this case, was filed April 17, 1997 and issued June 6, 2000.

This suit originally arose July 30, 2010 with the filing of Stretchline's Complaint. ECF No. 1. On February 9, 2011, H&M filed its Answer. ECF No. 12. On June 17, 2011, the Court received the Joint Notice of Settlement from the Parties. ECF No. 32. On July 11, 2011, nearly one year after the filing of this case, the Court entered the Stipulation and Order of Voluntary Dismissal and this case was stricken from its docket. ECF No. 33.

On April 4, 2013, nearly two years later, Plaintiff filed a Motion to Enforce Settlement Agreement. ECF No. 34. On June 10, 2013, this Court held a hearing and explained that Stretchline's Motion to Enforcement Settlement was premature because Stretchline had not "adequately pursued the requirements of [its] own agreement" before filing its motion. Mot. to Enforce Settlement Hr'g Tr. 3:4-7, June 10, 2013, ECF No. 48. Specifically, in the two years since reaching a settlement agreement, Stretchline had failed to turn over the accused products to H&M for examination. The Court ordered Stretchline to produce the accused products within 30 days and H&M to examine them within 10 days of receipt. *Id.* at 8:11-19. Thereafter, settlement negotiations broke down and the case proceeded toward trial.

On March 12, 2014, pursuant to this Court's Scheduling Order, discovery in this case began. With the exception of expert witnesses, discovery was set to conclude on March 10, 2015. On September 18, 2014, H&M served its notice of deposition of Mr. Norman Collier, Director of Stretchline, and Mr. Robert Glenn, co-inventor for the '578 Patent and head of IP for Stretchline, for November 11 and 12, 2014. On October 16, H&M noticed a Rule 30(b)(6) deposition on 26 topics scheduled for November 13. In late October, the parties agreed to a postponement. On November 14, 2014, H&M served Amended Notices of Deposition for December 16-18, 2014.

Stretchline subsequently responded that Collier would be available but Glenn would not be available until mid-January.

As a result of Stretchline repeatedly postponing the deposition of Robert Glenn, H&M believed Stretchline was concealing something important. Therefore, H&M's U.S. counsel asked co-inventor Mr. Roy Richardson if he would meet with H&M's UK counsel. Mr. Richardson agreed.

On November 26, 2014, John Christopher Hill, H&M's UK counsel, met with Mr. Richardson at his home in Coalville, Leicestershire, U.K. Hill Decl. ¶ 3. In his declaration, Hill alleges that Richardson gave him "photocopies of two documents issued by EMS Chemie, the manufacturer of 'Grilon K-85' brand fusible yarn." Hill Decl. ¶ 4. These documents are titled "Application sample for GRILON fusible bonding yarn" and are dated "24 February 1993" and "August 1994", respectively. *Id.* Hill stated that Richardson stated that he was given a sample of Grilon K-85 when he started working on the tubular fabric claimed in the '578 Patent. *Id.* at ¶ 5. Hill stated that Richardson told him he received the samples before he finished developing the tubular fabric, which was also prior to filing the UK patent. *Id.* Hill stated that he asked Richardson if he could take the original copies of the two EMS documents and Richardson agreed. *Id.* at ¶ 7.

On December 1, 2014, Stretchline stated that Collier would no longer be available for his December deposition. Def.'s Mem. in Opp'n to Pl.'s Mot. for Voluntary Dismissal 7, ECF No. 81.

On December 2, 2014, Stretchline filed a Motion to Compel Production of Sales and Revenue Documents for the accused products. ECF No. 71.

On December 3, 2014, "in an attempt to avoid burdening the Court with such mundane matters as deposition scheduling," H&M served its Second Amended Notices of Deposition for January 13-16, 2015. Def.'s Mem. in Opp'n to Pl.'s Mot. for Voluntary Dismissal 7, ECF No. 81.

On December 11, 2014, a Markman Hearing was held, at the start of which H&M announced that it would accept Stretchline's contention that "no construction is necessary" for three terms: "tubular fabric," "support yarn," and "elastomeric yarn." Markman Hr'g Tr. 3:17-21, ECF No. 77. With respect to the fourth term, "fusible yarn," H&M accepted Stretchline's meaning, "yarn that can be melted at a predetermined temperature and cooled to adhere to other yarn." *Id.* at 6:9-16. The Court notes that although at that time it had been more than three months since H&M's depositions request were first noticed, H&M did not use the Markman Hearing as an opportunity to raise its discovery issues with the Court.

On or about December 19, 2014, less than three months before the close of discovery, Hill forwarded copies of the original copies he received from Richardson to H&M's U.S. counsel. Hill Decl. at ¶ 7. Hill has retained the original copies in his office. *Id.*

In early January 2015, H&M's U.S. counsel produced the documents they received to Stretchline.

Sometime in January, "just days before" the depositions scheduled for January 13-16, 2015 were to take place, Stretchline requested that the Parties submit to mediation on January 13, 2015, the day Collier was to be deposed. Def.'s Mot. in Opp'n to Pl.'s Mot. for Voluntary Dismissal 7, ECF No. 81. H&M agreed to participate in mediation on the condition that Stretchline agreed to firm dates for the Collier and Glenn depositions. *Id.* Stretchline agreed. *Id.*

On January 13, 2015 mediation was held but no agreement was reached. *Id.* The Parties agreed to continue settlement negotiations. *Id.*

On January 15, 2015, H&M requested via email that Stretchline confirm the Collier and Glenn depositions for January 26-28, 2015. Stretchline never responded. *Id.*

On January 21, 2015, H&M made a settlement proposal that Stretchline rejected. *Id.*

On January 22, 2015, H&M received an email from Stretchline that included a Stipulation of Voluntary Dismissal. *Id.* at 10.

On January 23, 2015, H&M emailed Stretchline requesting that (1) Stretchline clarify what it was proposing in connection with the stipulated dismissal and (2) refrain from filing any motion (or give H&M a courtesy copy to review so that it would understand what Stretchline was seeking). *Id.* at 11. H&M stated that Stretchline did not respond. *Id.*

On January 26, 2015 – nearly 45 days before discovery was set to close – Stretchline filed its motion to voluntarily dismiss. ECF No. 79.

On February 4, 2015 – nearly 35 days before the close of discovery – H&M served a set of Requests for Admission "primarily directed to the EMS Chemie documents and related issues." Def.'s Mem. in Supp. of Mot. for Attorneys' Fees 7 n.5, ECF No. 92. H&M requested that Stretchline admit that Mr. Richardson and Mr. Glenn did not conceive of the use of fusible yarn in a tubular fabric and that they did not invent the invention in the '578 Patent. *Id.*

On February 9, 2015, H&M filed its memorandum in opposition to Stretchline's motion to voluntarily dismiss. ECF No. 81. In arguing against the motion H&M raised before this Court – for the first time – Stretchline's alleged failure to produce Mr. Collier and Mr. Glenn for their depositions. Def.'s Mem in Opp'n to Pl.'s Mot. for Voluntary Dismissal 5, ECF No. 81. On February 12, 2015, Stretchline filed its reply. ECF No. 83.

On February 24, 2015, this Court granted Stretchline's motion to voluntarily dismiss with prejudice and ordered that it pay H&M's costs. ECF No. 88. The Court also denied H&M's request for attorneys' fees under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power for defending the motion. *Id.* The Court also interpreted H&M's briefing as including a request for attorneys' fees under § 285 and denied the request because the record did not establish that this was an exceptional case. *Id.* Because Stretchline had originally requested a voluntary dismissal without prejudice, with each party bearing their own costs, the Court gave Stretchline ten days to determine whether it desired to withdraw its motion and continue litigation. *Id.*

On March 7, 2015, this Court's Order took effect.

On March 10, 2015, H&M filed a motion for clarification arguing, in part, that the Court's decision regarding attorneys' fees was premature as H&M could not have filed the motion prior to entry of the judgment dismissing the case. ECF No. 89. After reviewing Stretchline's response in opposition and H&M's reply, the Court granted the motion. It will now consider H&M's request for attorneys' fees under § 285.

## II. LEGAL STANDARDS

### A. Admissibility of Exhibits

Rule 901(a) of the Federal Rules of Evidence provides that the authentication requirement is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims." Fed. R. Evid. 901(a). "[T]he burden to authenticate under 901 is not high – only a prima facie showing is required." *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) (citing *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009)). While Rule 901 does not require conclusive proof of authenticity, it requires at least some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be. *See United*

*States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993) (citing *United States v. Jiminez-Lopez*, 873 F.2d 769, 772 (5th Cir. 1989)).

### B. Attorneys' Fees under 35 U.S.C. § 285

#### 1. Exceptional Case Determination

As provided in § 285, a district court "in exceptional cases may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court of the United States ("Supreme Court") recently set aside the Federal Circuit's standard to determine whether a case qualifies for "exceptional" treatment under § 285. The Supreme Court held that an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). The exceptional-case determination is a "case-by-case exercise of [the district court's] discretion, considering the totality of the circumstances." *Id.* All aspects of a district court's § 285 determination are now reviewed under an abuse of discretion standard. Courts should consider a "nonexclusive" list of factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Under the new standard, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1756-57. Further, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

```
```
### 2. Whether Fee Award is Appropriate

A determination that a case is exceptional does not automatically entitle the movant to attorneys' fees. *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases."). Whether an award of attorneys' fees is appropriate is discretionary. *See* 35 U.S.C. § 285 ("The court in exceptional cases *may* award reasonable attorney fees to the prevailing party." (emphasis added)).

### C. Inequitable Conduct

To prevail on a claim of inequitable conduct, a party must prove "that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Am. Calcar, Inc., v. Am. Honda Motor Co.*, 768 F.3d 1185, 1188 (Fed. Cir. 2014) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013)).

The parties appear to disagree on the burden of proof required to establish inequitable conduct when raised on a § 285 motion for attorneys' fees. Stretchline argues that H&M must establish both prongs of its inequitable conduct claim by clear and convincing evidence. Pl.'s Mem. in Opp'n to Def.'s Mot. for Attorneys' Fees 5-6, ECF No. 96. Although H&M acknowledges the holding in *Octane*, and states that the materiality prong of inequitable conduct must be proved by a preponderance of the evidence standard, for the intent prong it cites *Therasense* and states that intent may be inferred from indirect or circumstantial evidence, provided that the intent is "the single reasonable inference." Def.'s Mem. in Support of Def.'s Mot. for Attorneys' Fees, 8-10, ECF 92 (quoting *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F. 3d 1276, 1290-91 (Fed. Cir. 2011)). However, *Therasense* uses the phrase "the single

most reasonable inference," in the context of the clear and convincing evidence standard. *Therasense*, 649 F. 3d at 1290. While H&M drops the word "most," it repeatedly uses the phrase "the single reasonable inference," so it is unclear to the Court whether H&M believes it must meet its burden of proof by clear and convincing evidence or by a preponderance of the evidence.

Post-*Octane*, courts differ on the burden that applies to proving inequitable conduct. Some expressly state that the burden the court applies turns on at what point in the proceeding inequitable conduct is raised. For example, clear and convincing evidence is the standard when inequitable conduct is raised as a defense, but the preponderance of the evidence standard applies when it is raised as a basis for a fee award under § 285. *See e.g.*, *E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, Civ. No. 12-cv-517-LM, 2015 WL 4603463, at *5 (D.N.H. July 30, 2015). Other courts simply apply the clear and convincing standard when inequitable conduct is raised under § 285. *See e.g.*, *Robbins Co. v. Herrenknecht Tunnelling Sys. USA, Inc.*, No. 5:13cv2113, 2015 WL 3454946, at *4 (N.D. Ohio May 29, 2015).

The burden to show something by a preponderance of the evidence "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" *Concrete Pipe & Prods. of Cal., Inc., v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371-372 (1970)).

In *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, the party bringing a § 285 motion based on inequitable conduct expressly argued that *Octane*'s proof by the preponderance of the evidence applied but the opponent argued that the clear and convincing standard still

9

applied. Civ. A. No. 2:12-cv-00764-WCB, 2:12-cv-00338-WCB, 2015 WL 1284669, at *1 (E.D. Tex. Mar. 20, 2015). The district court stated:

> Since inequitable conduct is neither a necessary nor a sufficient condition for a finding of exceptionality, the evidence supporting the allegation stands on its own. Thus, the Court will consider that evidence as part of the "totality of the circumstances" inquiry required by *Octane*, and the totality of the evidence (including both evidence of alleged inequitable conduct and other evidence) will be weighed using the preponderance of the evidence standard. If the evidence of inequitable conduct is sufficient to satisfy the clear and convincing standard, the proof of inequitable conduct will be entitled to substantial weight in that calculation.

*Id.* at *5. In this case, the Court will use *DietGoal*'s approach.

### III. DISCUSSION

H&M claims the exhibits are EMS Chemie documents regarding the GRILON fusible yarn which pre-date submission of the '578 Patent. H&M contends that these documents are prior art, that because Richardson was in possession of these documents prior to the filing of the '578 Patent, he had actual knowledge of their status as prior art, that despite this actual knowledge, the applicant failed to disclose the EMS Chemie documents to the PTO, and that this failure to disclose was rooted in an intent to deceive.

Stretchline argues that the documents have not been authenticated and, even if the Court deems them admissible, they are confidential prototypes and therefore do not qualify as material prior art. Stretchline also argues that even if H&M establishes its materiality prong, it has not proven that the applicant acted with deceptive intent.

#### A. Admissibility of Exhibits

In opposing H&M's motion, Stretchline challenges the authenticity of and the meaning of the dates listed on the exhibits. Specifically, Stretchline argues, *inter alia*, that the exhibits are not properly authenticated and are therefore inadmissible under Federal Rule of Evidence 901.

10

Stretchline contends there has been no fact testimony explaining the documents or their origin. In addition, Stretchline maintains that H&M's submissions are hearsay for two reasons. First, the alleged EMS Chemie documents are inadmissible hearsay under Federal Rule of Evidence 802 to the extent H&M asks the Court to accept that "certain indicia on the documents represent dates, and in particular, that the dates reflected on the document demonstrate their date of publication." Pl.'s Mem. in Opp'n to Def.'s Mot. for Attorneys' Fees 3, ECF No. 96. Second, the Hill's declaration is classic hearsay in that H&M attempts to use his representations in order to prove the truth of the matters allegedly asserted by Richardson. *Id.* at 3-4. For example, that Richardson admitted to possessing these documents prior to filing the '578 Patent. *Id.* at 4.

In its Reply, H&M does not address Stretchline's evidence arguments. Instead, it attaches to a declaration from Dr. Norman Meyer, attorney at law and Head Legal Counsel for EMS, what appear to be the same exhibits, along with two others. ECF No. 103.

1. **Hill Declaration**

As an initial matter, Hill, who is counsel for H&M, cannot authenticate the alleged EMS Chemie documents. Although he can state that the documents offered are the documents he received from Richardson, he has no personal knowledge from which he can attest that the documents are what H&M claims them to be – EMS Chemie documents.

Even if Hill's declaration were sufficient to authenticate these documents, which it is not, his statements regarding anything Richardson allegedly told him are hearsay as Hill lacks personal knowledge of the matters allegedly related by Richardson. H&M has not argued that any exceptions apply to this rule. Indeed, H&M has not had the Court set any argument regarding the admissibility of these documents. Accordingly, the Court finds that Hill's declaration is insufficient to authenticate the exhibits.

2.  **Meyer Declaration**

Dr. Meyer declares, "I base the information contained in this declaration on certain documents which have been provided to me, my personal knowledge, and inquiries made within EMS Group." Meyer Decl. ¶ 2. The Court finds Dr. Meyer's declaration insufficient for three reasons. First, Dr. Meyer does not state the documents of which he is in possession. Hill's declaration stated he obtained copies of EMS Chemie documents from Richardson. Hill stated that he retained those copies in his office and forwarded copies – in other words, "copies of copies" – to H&M's U.S. counsel. In his declaration Dr. Meyer called the documents "copies." Yet, it is unclear to the Court whether the documents Dr. Meyer refers to are the original copies Hill allegedly received from Richardson or, copies of those copies. Second, Dr. Meyer does not state how he came into possession of the documents that are the subject of his declaration. Specifically, he does not state who gave them to him, when, and for what purpose. Third, Dr. Meyer does not explain how his position as Head Legal Counsel provides him personal knowledge about how the documents were produced

Accordingly, the Court finds that Dr. Meyer's declaration is also insufficient to authenticate the documents purported to be EMS Chemie documents.

Assuming, arguendo, that Dr. Meyer's declaration is sufficient to authenticate the documents and H&M has made a prima facie showing that the exhibit is what H&M claims it to be, as a result of the deficiencies the identified above, the Court gives it little weight to the documents because, as Stretchline noted, they have not been subjected to any evidentiary scrutiny. *See* Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 901.02[3] at 901-17 (Joseph M. McLaughlin ed., 2d ed. 2010) ("[I]ssues the opponent has raised about flaws in the authentication . . . go to the weight of the evidence instead of its

admissibility."). Indeed, H&M asks the Court to deem this case exceptional, a rare determination,[1] solely on the basis of copies of (copies of) documents that are more than 20 years old and in possession of H&M's UK counsel in London. While they may, for the sake of argument, be admissible, they are not entitled to great weight. Having produced no other evidence, the record before this Court is minimal. Considering the totality of the evidence, the record is insufficient to prove inequitable conduct by a preponderance of the evidence.

The Court also notes that H&M has not provided any circumstantial evidence that would authenticate the documents. For example, although circumstances surrounding a document's discovery would qualify, such evidence is absent in this case because these documents were allegedly stored in Richardson's home, not on EMS property. *See e.g., Burgess v. Premier Corp.*, 727 F.2d 826, 835-36 (9th Cir. 1984) (holding that exhibits found in defendant's warehouse were adequately authenticated simply by their being found there).

## B. Discovery Request

In its request for limited discovery, H&M argues that it would face an "unfair disadvantage" if the Court denies its Motion "solely because of what it considers to be an incomplete factual record." Def.'s Reply Mem. in Supp. of Def.'s Mot. for Attorneys' Fees 10, ECF No. 103. Using *Gaymar Industries* for support, H&M contends that "the purpose of discovery is to provide all parties with information essential to properly litigate the case." *Id.* (citing *Gaymar Indus. v. Cincinnati Sub-Zero Prods., Inc..*, No. 08-CV-2995, 2012 WL 176500, at *7 (W.D.N.Y. Jan. 20, 2012)). According to H&M, if the Court determines additional evidence is needed to decide H&M's motion, limited discovery should be permitted. Though not

---

[1] *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) ("Under the standard announced today, a district court may award fees in the *rare* case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.") (emphasis added).

expressly stating so, it is clear that Stretchline opposes any additional discovery. Pl.'s Mem. in Opp. to Def.'s Mot. for Attorneys' Fees 14, ECF No. 96 ("[N]o more public or private resources need be expended on this case.").

The Court finds that *Gaymar Industries* is distinguishable from the instant matter. In that case, the PTO, upon reexamination, invalidated the patent at issue. *Gaymar*, 2012 WL 176500, at *1. There has been no finding of invalidity in this case. Also, in *Gaymar Industries*, no discovery scheduling order had been issued. *Id.* at *7. Nonetheless, the parties embarked on the process of discovery but were later halted by a stay order. *Id.* By contrast, the scheduling order in this case was entered March 12, 2014 and no stay had been entered. Most relevant, however, is the difference in procedural posture. In *Gaymar Industries*, cross-motions to dismiss were pending. *Id.* at *1. Moreover, inequitable conduct was raised as a counterclaim for attorneys' fees in a separate motion for leave to file an amended an answer. *Id.* In this case, however, a motion to voluntarily dismiss has been granted and H&M seeks to formally raise inequitable conduct for the first time after judgment has been entered.

Also distinguishable is that the *Gaymar Industries* defendant proposed a "targeted" discovery request, identifying the individuals they wished to continue deposing and those they sought to depose for the first time. *Id.* at *7. Further, it proposed a deadline of 60 days. *Id.* By contrast, although H&M has stated that it is "prepared to file" a motion for limited discovery, it has not indicated the scope of the discovery it would propose. Def.'s Reply Mem. in Supp. of Def.'s Mot. for Attorneys' Fees 10, ECF No. 103. H&M has neither specified who it would seek to depose and why, nor has it suggested a timeframe for such discovery. Indeed, H&M frames its request for limited discovery in the context of whether this Court "deems it necessary or appropriate" in order to decide the motion. *Id.* But as the party carrying the burden, if H&M

believes there is a chance that this Court could find that the record is insufficient to support its fee request, the onus is on H&M to persuade the Court that it should entertain resuming discovery by identifying the kind of evidence it would attempt to gather, from whom, by which means, and within a specific timeframe. Although H&M has stated it is prepared to file a motion for limited discovery, because it has not provided any details as to the scope of discovery it seeks, the Court is not persuaded that it should even entertain such a motion.

The Court declines H&M's request for limited discovery for two key reasons.

### 1. Ample Time to Conduct Discovery

First, as revealed in this Court's lengthy recitation of the Parties' activities and communications during discovery, H&M had ample time to conduct discovery on their inequitable conduct claim before this matter was dismissed.

For example, if H&M seeks to depose Collier and Glenn, H&M had more than enough time to do so.[2] As noted above, discovery began on March 12, 2014. H&M sent its original notice of deposition on September 18, 2014, more than six months after discovery commenced. Given Stretchline's repeated delays in making Collier and Glenn available, H&M could have filed a motion to compel after Stretchline cancelled on December 1, 2014. Rather than seek the Court's intervention, H&M chose to serve a third notice. H&M says it did so "in an attempt to avoid burdening the Court with such mundane matters as deposition scheduling." Def.'s Mem. in Opp'n to Pl.'s Mot. for Voluntary Dismissal 7, ECF No. 81.

The Court also notes that H&M could have mentioned these "mundane matters" on December 11, 2014, when it was before the Court for the Markman Hearing. Although, as stated above, it was more than three months after it had first noticed the depositions, it was also less

---

[2] The Court is of the view that H&M regarded these individuals as relevant because on January 15, 2015, after they had been in possession of the documents in question for nearly a month, H&M sought again to have Collier and Glenn sit for depositions in late January.

than three months from the close of discovery. In other words, the time to conduct these depositions was running short.

The Court is also mindful that H&M's U.S. counsel, which "ha[d] spent considerable time and effort on locating prior art and on invalidity issues," dispatched its UK counsel to meet with Mr. Richardson because of Stretchline's repeated failures to make these witnesses available. Def.'s Mem. in Opp'n to Pl.'s Mot. for Voluntary Dismissal 9, ECF No. 81. On November 26, 2014, H&M obtained the documents it now asserts proves Stretchline engaged in inequitable conduct.[3] H&M's U.S. counsel received these documents seven days after the Markman Hearing. At that point H&M had yet another opportunity to file a Motion to Compel so they could depose Collier and Glenn. They did not.

After producing the documents to Stretchline at some point in January 2015, it appears the only discovery action H&M took related to these documents was serving a set of Requests for Admission on February 4, 2015 – nearly 35 days before the close of discovery.

Federal Rule of Civil Procedure 26(b) states that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: . . . (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). Such is the case here.

Prior to receiving the information that it now maintains supports an inequitable conduct claim, H&M showed very little urgency in deposing individuals they had deemed to be "key witness."[4] Indeed, H&M's characterization of the whole matter as "mundane," indicates to the

---

[3] Although H&M's UK counsel stated that he provided copies of the subject documents to H&M's U.S. counsel on December 19, 2014 – 24 days after the meeting – the Court thinks highly unlikely that UK counsel did not confer with U.S. counsel via phone or email at some point during those intervening days, especially since the meeting was held on the request of U.S. counsel.

[4] Def.'s Mem. in Opp'n to Pl.'s Mot. for Voluntary Dismissal 6, ECF No. 81.

Court that Stretchline's alleged attempts to frustrate their discovery plan was not, in its eyes, sufficiently important to warrant the Court's intervention.

But after the evidence surfaced, the Court concludes that the deposition scheduling that once seemed "mundane" surely was no longer so. Yet, when it was most pressing to address Stretchline's alleged non-compliance with discovery, H&M did seek the Court's intervention.[5] It is this failure to act that is most damaging to its request. Despite having ample time to do so, H&M did nothing to force Stretchline to produce these individuals for deposition. In failing to do so, H&M tolerated these delays.

Moreover, the Court notes that even if H&M wishes to conduct discovery upon persons other than Collier and Glenn, the Court's position is unchanged. The Court reiterates that evidence is question was not newly obtained. Discovery was still open when H&M learned of the documents in question on November 26, 2014, and when H&M's U.S. counsel obtained copies of those documents 23 days later on December 19, 2014. Therefore, any discovery H&M seeks now, could have been obtained then.

In considering a last-minute request for discovery, "a district court properly 'declines to extend discovery . . . when [a party] had many months to make both [its] initial and follow-up discovery requests." *Genzyme Corp. v. Lupin Ltd.*, Civ. Case Nos. JFM-09-563, JFM-09-1258, JFM-10-1906, JFM-09-653, JFM-09-846, JFM-10-1791, JFM-09-1750, JFM-10-1715, JFM-09-2589, 2011 WL 2490603, at *2 (D. Md. June 21, 2011). The record in this case is closed. H&M failed to appreciate the importance of obtaining discovery while the door was wide open. Now that the case has been dismissed, H&M effectively seeks to burden this Court with a discovery

---

[5] The Court understands that after H&M's third attempt to conduct depositions for January 13-16 was halted, the Parties continued settlement negotiations. Notwithstanding these settlement discussions, H&M continued to attempt to depose these witnesses and requested that Stretchline confirm them for January 26 to January 28. Stretchline never responded. At this point that H&M could have filed a Motion to Compel solely because discovery was going to close in less than two months.

request. That cannot be. Whether borne of its chosen litigation strategy or some other unknown reason, it was H&M's decision to not move expeditiously on these issues. The fact that H&M's actions have resulted in a record that is too thin to support a post-judgment motion for attorneys' fees does not justify this Court giving it a second chance to do what it should have done in the first instance. Thus, it is not accurate to say that H&M now faces an "unfair disadvantage."

### 2. Failure to Move for Summary Judgment

Second, despite having evidence of an inequitable conduct claim since December 2014 (at the latest via copies from UK counsel), H&M never moved for summary judgment on that basis. "Determining at summary judgment that a patent is unenforceable for inequitable conduct is permissible." *Dig. Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). Though uncommon, summary judgment on basis of inequitable conduct has been granted. *See e.g.*, *Worldwide Home Prods., Inc. v. Bed, Bath and Beyond, Inc.*, No. 11CV3633-LTS-MHD, 2015 WL 1573325, at *1 (S.D.N.Y. Apr. 9, 2015) (granting § 285 motion following grant of summary judgment for inequitable conduct).

In cases where the basis for an inequitable conduct charge is known to a party prior to the close of a case but that party forgoes moving for summary judgment, and instead raises its arguments for the first time in a motion for attorneys' fees, that party "put[s] the Court in the position that it is required to rule on [the attorneys' fee] issue with only minimal briefing and no substantial evidentiary development." *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, Civ. A. No. 2:12-cv-00764-WCB, 2:12-cv-00338-WCB, 2015 WL 1284669, at *6 (E.D. Tex. Mar. 20, 2015). As stated in *DietGoal*, "because the burden is on [the moving party] to show that this case is exceptional, the consequences of a thin record on this issue fall upon [the moving party]." *Id.* (citing *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1367 (Fed.

Cir. 2004) (discussing the belated raising of the inequitable conduct issue)). Moreover, "courts have been very reluctant to allow discovery on facts allegedly necessary to prove the exceptional nature of a case after its resolution 'so as to not allow fee litigation to be the tail that wags the dog.'" *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05CV80, 2008 WL 4404540, at *5 (N.D. Ohio Sept. 24, 2008) (quoting *Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 743 (M.D.N.C. 2003)); *see also Forcillo v. Lemond*, 168 F. App'x 429, 431 (Fed. Cir. 2006) (holding that where a case is voluntarily dismissed with prejudice and judgment has already been entered, a court is justified in declining to conduct proceedings which will amount to a bench trial on the issue of inequitable conduct).

## IV. CONCLUSION

The Court finds that H&M has failed to properly authenticate the exhibits it submits in support of its inequitable conduct claim. But, even assuming that the exhibits are admissible, they are insufficient to establish that this is an exceptional case by a preponderance of the evidence. Because H&M has not established this is an exceptional case, the court need not evaluate whether a fee award is appropriate under § 285.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
September 3, 2015

Raymond A. Jackson
United States District Judge